NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

LOCAL NO. 42, INTERNATIONAL AS-
SOCIATION OF HEAT AND FROST
INSULATORS AND ASBESTOS
WORKERS, Respondent.

No. 72–1145.

United States Court of Appeals,
Third Circuit.

Submitted Oct. 2, 1972.

Decided Nov. 7, 1972.

Rehearing En Banc Denied
Feb. 21, 1973.

**164**

Marcel Mallet-Prevost, Asst. General Counsel, N.L.R.B., Washington, D. C., for petitioner.

Harvey B. Rubenstein, Wilmington, Del., for respondent.

Before SEITZ, Chief Judge, and HASTIE and HUNTER, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM:

This is an application by the National Labor Relations Board (Board) for enforcement of its order against Respondent, Local No. 42, International Association of Heat & Frost Insulators & Asbestos Workers (Union).

As found by the Board, the three insulation contractors in Wilmington, Delaware had negotiated as a multi-employer unit previous to 1970, with each employer signing the final contract with the Union separately. In anticipation of the 1970 contract negotiations, they joined the Allied Construction Industries Division of the Delaware Contractors' Association, Inc. (DCA), a trade association; DCA then formed the Insulation Trade Group, a subdivision composed exclusively of the three contractors. These contractors desired the association to negotiate and execute the upcoming contracts with the Union. Both DCA and the employers notified the Union of this intention. When negotiations began on May 19, 1970, the Union objected to the substitution of DCA as the contracting party. Although it continued these objections in subsequent bargaining sessions, the Board found these insufficient to nullify the acceptance evidenced by the Union's negotiations with DCA on substantive elements of the contract. While it noted that substantial progress had been made on various provisions, it focused particularly upon the tentative term in the contract recognizing DCA as the contracting party.

On July 14, 1970, the existing contract expired, and the Union struck the contractors. DCA issued a press release detailing the bargaining positions of the parties, contrary to the past practice of secrecy during negotiations. Because of this, the Union refused to bargain further with DCA and insisted that all future negotiations be between the Union and the employers themselves, as in the past.

DCA filed a complaint with the Board, charging the Union with refusal to negotiate, in violation of § 8(b)(3) of the National Labor Relations Act, as amended [29 U.S.C. § 158(b)(3) (1971)]. After a hearing, the Trial Examiner concluded that the Union had never accepted DCA as a negotiating party and dismissed the complaint; he premised the dismissal upon his finding that the continuing objections by the Union nullified any manifested acceptance of DCA as a party. The Board reversed, ordering the Union to sign a contract with DCA, upon request, identical to the one executed with the three employers, but incorporating a provision designating DCA as the bargaining and contracting agent for the three. It is this order which it now seeks to have us enforce.

Once a party agrees to multi-employer unit bargaining, it cannot withdraw its assent during negotiations absent special conditions or mutual consent of the parties. *Cf.* NLRB v. John J. Corbett Press, 401 F.2d 673 (2d Cir. 1968); *see also* NLRB v. Dover Tavern Owners' Ass'n, 412 F.2d 725 (3d Cir. 1969). A corollary is that once assent is given to the inclusion of a party, it cannot be withdrawn during negotiations absent similar conditions. However, a peculiar twist is presented here. While the Board found that the Union continued to object to DCA as the bargaining party, it also found that the Union had negotiated with DCA on specific terms of the contract, manifesting by its actions acceptance of DCA as the contracting party. This finding, which directly contradicted the Trial Examiner's, was the premise for the Board's reversal. Therefore, the critical issue before this court is whether the Board properly exercised its powers in making this determination.

The Board has the power to draw different conclusions from evidentiary facts presented to the Trial Examiner, as it did here. *See* International Union of Elec., Radio and Machine Workers, A.F.L.–C.I.O. v. NLRB, 273 F.2d 243, 247 (3d Cir. 1959). In turn, this court must determine whether the Board's decision is supported by substantial evidence on the record. *See* Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Utilizing these two standards, we find that the Board validly exercised its power in reversing the Trial Examiner and that its findings were substantially supported by the record.

Three additional issues raised by the Union merit short discussion. First, the Union contends that substitution of DCA as signatory party was a subject for negotiation. The Board's order requiring it to execute a contract with DCA, it claims, undermines the collective bargaining process. However, the Board found that the Union had accepted DCA as the contracting party; consequently, its order merely remedies the unfair labor practice committed by the Union. Secondly, the Union contends that since DCA was not a party to the final contract, the association had no standing to file a complaint with the Board over its wrongful exclusion. The Union claims the Act grants standing only to an "aggrieved party"; therefore, the Board rule which grants standing to "any party" exceeds the statutory grant and is invalid. This court previously has upheld the validity of the Board's rule. *See* NLRB v. Television & Radio Brdcstg. Studio Employees, 315 F.2d 398 (3d Cir. 1963). Thirdly, the Union contends that since the final contracts, as signed, failed to include a stipulation preserving DCA's rights before the Board, DCA and the employers have waived their right to a Board-enforced remedy. However, absent an express waiver of § 8 rights, none will be inferred. *See* Timken Roller Bearing Co. v. NLRB, 325 F.2d 746 (6th Cir. 1963), cert. denied, 376 U.S. 971, 84 S.Ct. 1135,

12 L.Ed.2d 85 (1964). The Union has not shown any express waiver here.

After examining the record, we have concluded that a modification of the Board's order must be made. Prior to the Union's refusal to negotiate with DCA, the parties agreed the signatory party for the employers would be the Insulation Trade Group of DCA, composed exclusively of the three area insulation contractors. This limitation was agreed upon to ameliorate the Union's fears that signing with DCA would require it to furnish its members to all association members upon demand. This necessarily was one of the elements which induced the acceptance by the Union of DCA found by the Board. Therefore, the order requiring the Union to execute a contract with DCA will be modified to require the Union to execute it solely with the Insulation Trade Group, Allied Construction Industries Division of DCA.

The order of the Board will be enforced as modified herein.