**GERRY'S CASH MARKETS, INC., d/b/a Gerry's I.G.A., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 78–1539.

United States Court of Appeals, First Circuit.

Argued April 5, 1979.

Decided Aug. 8, 1979.

Paul V. Mulkern, Jr., Boston, Mass., with whom Kingston & Garrett, Boston, Mass., was on brief, for petitioner.

Stephen Mayer, Atty., Washington, D. C., with whom John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and Andrew F. Tranovich, Atty., Washington, D. C., for respondent.

ON PETITION FOR REVIEW OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD

Before COFFIN, Chief Judge, and CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This case is before us on a petition for review and a cross-application for enforcement of an order of the National Labor Relations Board. 238 NLRB No. 161. The Board, adopting the rulings, findings, and conclusions of the administrative law judge (ALJ), found that the employer, Gerry's Cash Markets, Inc. (Gerry's), a three-store retail grocery chain, had engaged in several unfair labor practices during a union organizational campaign at its Keene, New Hampshire store. In particular, Gerry's was found to have violated § 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), by maintaining and enforcing an overly broad no solicitation rule;[1] demoting a supervisor, Robert MacKenzie, for failing to enforce that rule; making promises of certain benefits the day before a representation election; and indicating to employees that an issue, regarding a "stress test," or lie detector test, Gerry's required employees to take, was nonnegotiable. The Board also found that Gerry's had violated § 8(a)(3) of the Act, 29 U.S.C. § 158(a)(3), by reducing the working hours of and later discharging an employee, David Frampton, for violating the no solicitation rule, and that Gerry's had violated both § 8(a)(1) and § 8(a)(3) by denying to employees at its Keene store benefits which it granted to employees at its other two stores where union organizing was not taking place.

Gerry's does not now contest most of these findings. It challenges only the finding of a § 8(a)(1) violation based upon the demotion of supervisor Robert MacKenzie, and the requirement that it post the ordered "Notice to Employees" at its two stores where none of the unfair labor practices occurred.

Robert MacKenzie had been assistant manager at Gerry's Keene store for four years prior to his demotion. As such, he was a statutory supervisor excluded from the protection of the Act. 29 U.S.C. §§ 152(3), 152(11), and 157. Nevertheless, the Board concluded that his demotion violated § 8(a)(1) in keeping with its precedents to the effect that the discharge or discipline of a supervisor may violate § 8(a)(1) where it is "an integral part of the unlawful effort to thwart employees' union activities, or where discipline is meted out because the supervisor refuses or fails to engage in unlawful conduct, or where the supervisor assists employees in proceedings

---

[1]. The no solicitation rule provided,

"To maintain efficiency and give service to our customers it is the company policy that employees handle their personal business on their own time. There shall be no solicitation or non-business activity regardless of cause *conducted* on the premises without the prior *permission* of the *Store Owner* or *Store Manager*." (Emphasis in original.)

The rule was held facially invalid as a total ban on solicitation on company property, not limited to working time, *see Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945), and as applied disparately to union and non-union matters.

under their contract or before the Board." *Buddies Super Markets*, 223 NLRB 950 (1976), *enforcement denied mem.*, 550 F.2d 39 (5th Cir. 1977); *see Donelson Packing Co.*, 220 NLRB 1043 (1975), *enforced*, 569 F.2d 430 (6th Cir. 1978); *Krebs & King Toyota, Inc.*, 197 NLRB 462 (1972); *Elder-Beerman Stores Corp.*, 173 NLRB 566 (1968), *enforced*, 415 F.2d 1375 (6th Cir. 1969), *cert. denied*, 397 U.S. 1009, 90 S.Ct. 1237, 25 L.Ed.2d 421 (1970); *Pioneer Drilling Co.*, 162 NLRB 918, 923 (1967), *enforced in pertinent part*, 391 F.2d 961 (10th Cir. 1968); *Miami Coca Cola Bottling Co.*, 140 NLRB 1359, 1361 (1963), *enforcement denied in pertinent part*, 341 F.2d 524 (5th Cir. 1965). While the matter has not previously come before this circuit, other courts have agreed that the discipline or discharge of a supervisor may violate § 8(a)(1) in such situations. *Russell Stover Candies, Inc. v. NLRB*, 551 F.2d 204 (8th Cir. 1977); *NLRB v. Carter Lumber, Inc.*, 507 F.2d 1262 (6th Cir. 1974); *Elder-Beerman Stores Corp. v. NLRB*, 415 F.2d 1375; *Oil City Brass Works v. NLRB*, 357 F.2d 466 (5th Cir. 1966); *NLRB v. Brookside Industries, Inc.*, 308 F.2d 224 (4th Cir. 1962); *NLRB v. Talladega Cotton Factory, Inc.*, 213 F.2d 209 (5th Cir. 1954). The underlying theory is not, of course, that the Act protects the supervisor, which it does not, nor even that disciplining a supervisor for union activities instills fear in rank-and-file employees that their own protected union activities may subject them to a similar fate. Rather, the theory is that if employers are allowed to force supervisors to engage in unfair labor practices, this necessarily results in direct interference with the affected rank-and-file employees in the exercise of their § 7 rights. *Oil City Brass Works v. NLRB*, 357 F.2d at 470–71; *Krebs & King Toyota, Inc.*, 197 NLRB at 464 (Kennedy, M. concurring in part and dissenting in part). *But see Russell Stover Candies, Inc. v. NLRB*, 551 F.2d at 206–07.

The ALJ succinctly stated the rule as follows:

> "[A]n employer's enlistment of a supervisor in its unfair labor practices as the price for retaining his job unlawfully coerces the statutory employees in the exercise of their Section 7 rights."

It was the ALJ's conclusion, accepted by the Board, that MacKenzie was demoted for failure to enforce Gerry's "invalid no solicitation rule" during an incident at the store on Sunday, October 24, 1976. The circumstances are the following. On Saturday, October 23, an organizational campaign began, led by David Frampton who distributed union authorization cards to other employees at the Keene store. The next day Frampton continued his solicitation and had a long conversation with Dennis Delworth, supervisor of the bakery-delicatessen section of the store. The conversation evidently took place in the meat section while both men were on duty, Frampton in the meat section and Delworth supposedly in the bakery-delicatessen. MacKenzie was in charge of the store at the time. The next day, Monday, Delworth reported the incident to Peter Bellavance, the store manager. Bellavance gave the following testimony regarding his conversation with MacKenzie:

> "A. I asked him if he knew that Mr. Frampton and Mr. Delworth had engaged in roughly one hour's conversation pertaining to the union on company time. And one of them had to be out of the department.
>
> And he said no. And he claimed that Mr. Delworth was lying to me.
>
> •   •   •   •   •
>
> Q. What was the basis of the conversation, his failure to enforce the [no solicitation] rule?
> A. It wasn't solicitation only. It was people that had been outside their departments for that amount of time, not producing, and had not been put back to work. That's what my area of contention was.
> Q. And this was based upon a conversation that you had with Dennis Delworth the previous day?
> A. Right.
> Q. But a part of that was concerning the rule, was it not?
> A. Right."

MacKenzie's testimony regarding the conversation was the following:

"[A.] [Bellavance] said there had been union activities that Sunday for three and a half hours.

. . . . .

A. And that he didn't want activities like that going on in the store; and that they were against the policies of the store, and so forth."

Later that week Bellavance and his father, the chain's general manager, decided to remove MacKenzie from his managerial position and to put him in a non-managerial job in the freight department. Bellavance testified that the Frampton-Delworth incident "was a part of that decision." The demotion took place on Friday, October 29.[2]

The ALJ and the Board concluded that MacKenzie's demotion was motivated primarily by his failure to enforce the no solicitation rule by stopping the Frampton-Delworth conversation. They went on to reason that since the no solicitation rule was invalid, MacKenzie's enforcement of it would have been an unfair labor practice, so that his demotion for failing to do so violated § 8(a)(1).

We are satisfied that there is substantial evidence underlying the finding that MacKenzie was transferred because of his failure to support the no solicitation rule by stopping the Frampton-Delworth conversation. Gerry's defended the demotion on the ground of purported deficiencies in MacKenzie's performance as a manager, but the ALJ supportably found that this defense did not wash. There was evidence that after the various incidents which allegedly caused Gerry's to become dissatisfied with MacKenzie's managerial performance, Gerry's offered him a similar slot elsewhere in the Gerry's organization.[3] We find no merit in Gerry's argument to us that MacKenzie could not have been demoted for failing

to interfere with union solicitation since he was unaware that such was taking place. There was ample evidence to the contrary.

Gerry's argues that it was entitled to have its supervisor put men back to work during working hours even if its formal no solicitation rule was too broad. This argument would be persuasive had not the Board found that the no solicitation rule, besides being too broad, was being discriminatorily applied. The ALJ found that solicitation for non-union purposes was allowed even in selling areas, while Bellevance issued orders against union activity "in the store." The ALJ also found that talking among employees was regularly permitted anywhere in the store on any subject but unions or suspected to concern unions. He concluded,

"Thus the rule was also violative of the Act because of the disparate treatment accorded union matters in its enforcement. *E.g., Mitsubishi Aircraft International, Inc.,* 212 NLRB 856, 863–865."

The ALJ did not expressly find that breaking up the Frampton-Delworth conversation would have been a further manifestation of Gerry's disparate policies, but such a finding is implicit from the ALJ's opinion. While an employer has a right to insist that working time is for work, he does not have a right to adopt or invoke a no solicitation rule discriminatorily. *See Republic Aviation Corp. v. NLRB,* 324 U.S. 793, 803–04 n.10, 65 S.Ct. 982 (1945); *NLRB v. J. P. Stevens & Co.,* 563 F.2d 8, 15 (2d Cir. 1977), cert. denied, 434 U.S. 1064, 98 S.Ct. 1240, 55 L.Ed.2d 765 (1978); *NLRB v. Sunnyland Packing Co.,* 557 F.2d 1157 (5th Cir. 1977); *NLRB v. J. W. Mortell Co.,* 440 F.2d 455, 457 (7th Cir. 1971); *William L. Bonnell Co. v. NLRB,* 405 F.2d 593, 595 (5th Cir. 1969). There was sufficient evidence from which

---

**2.** In his new position MacKenzie earned the same hourly wage but suffered a cut in the number of hours he worked.

**3.** The ALJ found that the employer's tendered reasons did not enter into Gerry's calculations at all, and since the evidence supports this view, we uphold it. We entirely reject the ALJ's alternative finding that "[e]ven crediting

[Gerry's] testimony that other motives entered into the determination such partial motivation suffices to establish the violation." *See NLRB v. Eastern Smelting & Refining Corp.,* 598 F.2d 666, at 669–672 (1st Cir. 1978). We would reverse out of hand if this by now utterly discredited "partial motivation" theory were crucial to the Board's finding.

the Board could conclude that Bellevance's unhappiness with MacKenzie stemmed not from the latter's failure during working hours to carry out an even-handed, neutral policy against solicitation and conversation, but rather from MacKenzie's failure to push aggressively a policy aimed discriminatorily at solicitation and conversation relating to union activity. Even during working hours, Gerry's could not rigorously prohibit talk about union activity while winking at other activities or conversation having substantially equal potential for interference with work.[4] Given the evidence of discriminatory enforcement of whatever no solicitation rule and policy then prevailed at Gerry's, the Board was entitled to conclude that Gerry's was seeking to enlist MacKenzie in its discriminatory policies, and that his transfer for failure to enter into such policies was in retaliation for an unwillingness to enter into conduct forbidden by the Act. We shall accordingly enforce its order holding that the transfer of MacKenzie was in violation of § 8(a)(1).

■ Gerry's also contests the Board's requirement that it post the ordered "Notice to Employees" of the violations at its two stores where none of the unfair labor practices occurred. Section 10(c) of the Act, 29 U.S.C. § 160(c), broadly authorizes the Board to require a person who has engaged in an unfair labor practice "to take such affirmative action . . . as will effectuate the policies of this Act." The scope of our review is limited to determining whether "the Board's remedy was based on a rational judgment as to how effectively to promote the goals of the Act." *Trustees of Boston University v. NLRB,* 548 F.2d 391 at 394. "In fashioning its remedies under [§ 10(c)], the Board draws on a fund of knowledge and expertise all its own, and its

choice of remedy must therefore be given special respect by reviewing courts." *NLRB v. Gissel Packing Co.,* 395 U.S. 575, 612 n.32, 89 S.Ct. 1918, 1939, 23 L.Ed.2d 547 (1969). In this case, benefits previously intended for employees at all three of Gerry's stores were granted only to employees at the two stores not involved in the union organizational campaign, and the Board found that the denial of benefits to employees at the Keene store violated the Act. The ALJ's opinion clearly infers that this discriminatory grant of benefits was designed at least in part to discourage employees at the other two stores from union organization. In this context, the Board acted within the scope of its discretion in ordering the posting of notices at all three of Gerry's stores.

*The Board's order will be enforced.*

---

4. We disagree with the Board's argument that Gerry's right to enforce an even-handed no solicitation rule during working hours and in working areas would be subject to some kind of further burden to show that the solicitation interfered with reasonably expected work. The only requirement is that such rules, to the extent properly limited, be non-discriminatory. *Republic Aviation Corp. v. NLRB,* 324 U.S. 793, 803–04, 65 S.Ct. 982 (1945). If the only vice of Gerry's formal rule was over-breadth, the mere existence of such a defectively broad rule would not prevent the company from limiting solicitation during proper working hours pursuant to a non-discriminatory, even-handed policy. The difficulty here is that Gerry's attempted application of its no solicitation rule appears to have been tailored to a double-standard aimed at discouraging union solicitation and conversation while allowing greater leeway as to other activities.