897 P.2d 725

Andy CHAVEZ and Isabel Chavez, husband and wife, Plaintiffs–Appellants/Cross–Appellees,

v.

COPPER STATE RUBBER OF ARIZONA, INC., an Arizona corporation; Joyce Grimes and John Doe Grimes, wife and husband, Defendants–Appellees/Cross–Appellants.

No. 1 CA–CV 92–0437.

Court of Appeals of Arizona, Division 1, Department B.

Feb. 14, 1995.

Review Denied June 29, 1995.

---

Francis G. Fanning, Phoenix, for plaintiffs-appellants/cross-appellees.

Snell & Wilmer by Robert J. Deeny, Thomas J. Kennedy, Daniel J. McAuliffe, Phoenix, for defendants-appellees/cross-appellants.

## OPINION

McGREGOR, Presiding Judge.

Appellant Andy Chavez (Chavez) brought claims against his employer for breach of employment contract and for wrongful discharge and a claim against the employer's general manager for intentional interference with contract. The issue is whether federal labor law preempts these state court claims. We conclude the doctrine of preemption applies and deprives the state courts of jurisdiction.

### I.

From 1978 until April 1990, Chavez worked for Copper State Rubber of Arizona, Inc. (Copper State), serving in a supervisory position for the last nine years. At the end

of 1989, employees at Copper State voted to establish a union. According to Chavez, Joyce Grimes, manager of Copper State when Chavez's employment at Copper State ended, instructed Chavez to treat non-union employees more favorably than union employees. When Chavez refused, Grimes allegedly accused Chavez of being disloyal to the company and supporting the union. Copper State and Grimes (collectively, appellees) gave Chavez three options: resign, be laid off with good references, or be terminated. Chavez requested a fourth option of consulting an attorney, to which appellees agreed. After his attorney's subsequent discussions with Copper State and Grimes, Chavez returned to work. When he returned, Grimes presented Chavez with a warning report reprimanding him for betraying the company, stealing letterhead stationery to assist an illegal act of another employee, repeating confidential management information to employees, and supporting the union. Chavez refused to sign the reprimand; the parties dispute whether he then quit or was terminated.

About the time that Chavez's employment with Copper State ended, the union filed a complaint with the National Labor Relations Board (NLRB) against Copper State for unfair labor practices in connection with other events. The union did not challenge Chavez's discharge in its complaint. Chavez's wife stated in an affidavit that she had contacted two agents at the NLRB, who told her that Chavez could not obtain relief from the NLRB because he was a supervisor.

Chavez then filed this action in superior court, alleging breach of contract, wrongful discharge, and intentional interference with contract. In the allegations common to all counts, Chavez alleged that "Grimes told [Chavez] that he should discriminate and make life hard for those supporting the union, but he should not criticize or discipline non-union employees for improper performance of their jobs"; that "[Chavez] protested this directive"; and that "Grimes falsely accused [Chavez] of supporting the union and

being disloyal to management." He asserted that appellees breached his contract of employment by terminating him without cause and wrongfully terminated him in retaliation for refusing to coerce employees not to join the union. He further alleged that Grimes wrongfully interfered with his employment contract with Copper State.

Appellees moved for summary judgment, arguing that the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (a)(3) (the Act) preempts Chavez's claims; that Chavez was an at-will employee; that Copper State had cause to terminate Chavez; and that Chavez quit his job, so Copper State did not terminate him at all. The trial court denied the motion.

Copper State and Grimes moved for reconsideration, conceding for the purposes of the motion that Chavez was a supervisor and that Copper State discharged him for refusing to commit unfair labor practices. Upon reconsideration, the trial court concluded that the Act preempts Chavez's claims for wrongful discharge and intentional interference with contract and entered judgment pursuant to Rule 54(b), Ariz.R.Civ.P., for appellees on those claims. Chavez brought this appeal.[1] The court limited Chavez's breach of contract claim to grounds other than refusing to engage in unfair labor practices. Copper State and Grimes cross-appealed, arguing that the Act also preempts the breach of contract claim.

We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101.B. *See M & M Auto Storage Pool, Inc. v. Chemical Waste Management, Inc.,* 164 Ariz. 139, 141, 791 P.2d 665, 667 (App.1990).

## II.

■ For the purposes of the motion, Copper State and Grimes stipulated to the material facts as alleged by Chavez. We therefore review the grant of summary judgment to determine whether appellees are entitled to judgment as a matter of law. *Schroeder v.*

---

1. The parties stipulated to stay the trial for the remaining breach of contract claim pending resolution of this appeal.

*Hudgins,* 142 Ariz. 395, 397, 690 P.2d 114, 116 (App.1984).

### III.

■ Congress passed the Act in an effort to achieve uniform and effective enforcement of a national labor policy. *Local 926, Int'l Union of Operating Eng'rs v. Jones,* 460 U.S. 669, 681, 103 S.Ct. 1453, 1461, 75 L.Ed.2d 368 (1983). The Supreme Court "has often been asked to determine whether particular state causes of action or regulations may coexist with the comprehensive amalgam of substantive law and regulatory arrangements that Congress set up in [the Act].... " *Id.* at 675, 103 S.Ct. at 1458. If the causes of action cannot coexist, the doctrine of preemption applies.

■ The Court has "stated and restated" its approach to the preemption issue. The first question is "whether the conduct that the State seeks to regulate or to make the basis of liability is actually or arguably protected or prohibited by [the Act]," *id.* at 676, 103 S.Ct. at 1458:

> When it is clear or *may be fairly assumed* that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law.

*San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon,* 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959) (emphasis added).

If the conduct at issue is arguably protected or prohibited, the NLRB, not the state court, determines whether the conduct falls within the NLRB's jurisdiction:

> At times it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudi-

cate such issues. *It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board.* What is outside the scope of this Court's authority cannot remain within a State's power and state jurisdiction too must yield to the exclusive primary competence of the Board.

> . . . . .

> When an activity *is arguably subject to* § 7 or § 8 of the Act, *the States* as well as the federal courts *must defer to the exclusive competence of the National Labor Relations Board* if the danger of state interference with national policy is to be averted.

*Id.* at 244–45, 79 S.Ct. at 779 (citations omitted) (emphasis added).

■ Finally, we consider whether the activity regulated is "only a peripheral concern of the Act" or touches interests "deeply rooted in local feeling and responsibility...." *Jones,* 460 U.S. at 676, 103 S.Ct. at 1459. If the balance of those interests weighs in favor of the state interest, preemption does not apply.

### IV.

#### A.

■ We turn, then, to the initial inquiry whether Copper State's conduct in discharging Chavez is conduct arguably prohibited by the Act. In determining whether preemption applies, we look to the nature of the conduct involved, rather than to the legal theories advanced by Chavez. *See Motor Coach Employees v. Lockridge,* 403 U.S. 274, 292, 91 S.Ct. 1909, 1920–21, 29 L.Ed.2d 473 (1971). If the challenged conduct is arguably prohibited by the Act, due regard for the federal enactment requires us to yield jurisdiction.

■ Chavez's status as a supervisor affects our inquiry concerning whether the conduct involved is arguably regulated by the Act. Because the Act excludes supervisors from its definition of "employee," 29 U.S.C.A. § 152(3); *Automobile Salesmen's Union Local 1095 v. NLRB,* 711 F.2d 383, 386 (D.C.

1983), a supervisor's discharge usually is not of concern to the NLRB. Nevertheless, courts have carved out three basic exceptions to this rule. An employer's conduct toward a supervisor may violate Section 8(a)(1) of the Act [2] (1) if the employer disciplines a supervisor for testifying before the NLRB or during the processing of an employee's grievance; (2) if the employer disciplines a supervisor for refusing to commit an unfair labor practice; or (3) if the employer discharges a supervisor who hires his own crew as a pretext for terminating his pro-union crew. *Automobile Salesmen's*, 711 F.2d at 386. (citations omitted).

■ Chavez's claim that Copper State discharged him because he refused to discriminate against union members falls squarely within the second exception, which prohibits employers from funnelling unfair labor practices through a supervisor. *Gerry's Cash Markets, Inc. v. NLRB*, 602 F.2d 1021 (1st Cir.1979) illustrates this exception.[3] In that case, Gerry's implemented a "no solicitation" rule that banned any solicitation or non-business activity on company property. An assistant manager, who had worked for Gerry's for four years, failed to enforce the solicitation ban against two employees who discussed union organizing activities while on duty. Gerry's demoted the assistant manager as a result of this incident.

The NLRB found that the ban on solicitation was overly broad and that Gerry's applied the ban disparately to union and non-union matters. Notwithstanding the fact that, as a supervisor, the assistant manager was excluded from the Act's protection, the NLRB concluded that requiring the assistant manager to enforce an invalid "no solicitation" rule constituted an unfair labor practice. Therefore, the manager's subsequent demotion also was an unfair labor practice. Although Gerry's defended the demotion on the ground of purported deficiencies in the assistant manager's performance, the court of appeals upheld the NLRB's ruling that an "employer's enlistment of a supervisor in its unfair labor practices as the price for retaining his job unlawfully coerces the statutory employees in the exercise of their Section 7 rights." 602 F.2d at 1023 (quoting the administrative law judge).

This type of violation precisely describes Chavez's wrongful discharge and intentional interference claims, which rely on his allegation that appellees enlisted him to treat non-union workers more favorably than union workers in exchange for retaining his job. Such claims arguably fall under the protection of Section 8 of the Act and, therefore, are preempted unless they fall within an exception to the preemption doctrine.

## B.

■ Many courts have addressed the Act's preemptive scope in cases in which employees assert state causes of action in addition to, or in lieu of, unfair labor practice claims before the NLRB. The critical inquiry in these situations is whether the conduct at issue in the state cause of action is identical to that which could be presented to the NLRB. *Sears, Roebuck & Co. v. Carpenters*, 436 U.S. 180, 197, 98 S.Ct. 1745, 1757–58, 56 L.Ed.2d 209 (1978).[4] "[I]f the conduct relied

---

**2.** Section 8(a)(1) states that "[i]t shall be an unfair labor practice for an employer [ ] to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title[.]"

**3.** Although *Gerry's Cash Markets* was a case of first impression in the First Circuit, the court cited several other court of appeals decisions that held that disciplining or discharging a supervisor in similar circumstances may constitute an unfair labor practice. 602 F.2d at 1023; *see, e.g.*, *Russell Stover Candies, Inc. v. NLRB*, 551 F.2d 204 (8th Cir.1977); *NLRB v. Carter Lumber, Inc.*, 507 F.2d 1262 (6th Cir.1974); *Oil City Brass Works v. NLRB*, 357 F.2d 466 (5th Cir.1966).

**4.** *See, e.g.*, *Belknap, Inc. v. Hale*, 463 U.S. 491, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983) (finding no preemption for replacement workers' misrepresentation and breach of contract claims because the controversies were different than that which the NLRB would review; moreover, the NLRB could provide no relief); *Ring v. River Walk Manor, Inc.*, 596 F.Supp. 393 (Md.1984) (finding no preemption where plaintiff did not raise any unfair labor practice claims and admitted she could not prove one); *Sitek v. Forest City Enters. Inc.*, 587 F.Supp. 1381 (E.D.Mich.1984) (reaching merits of case to demonstrate preemption of wrongful discharge claim); *Henry v. Intercontinental Radio, Inc.*, 155 Cal.App.3d 707, 202 Cal.Rptr. 328 (Ct.App.1984) (holding that Act preempted state court actions alleging tortious

on to prove a crucial element in the state action is conduct that is arguably covered by [the Act], then the state claim is preempted." *Lumber Prod. Indus. Workers v. West Coast Indus. Rel. Ass'n, Inc.,* 775 F.2d 1042, 1049 (9th Cir.1985).

██ Whether a court may exercise jurisdiction also depends on whether the conduct that is the subject of the action is behavior that is of only peripheral concern to the federal law or touches interests deeply rooted in local feeling and responsibility. *Garmon,* 359 U.S. at 243–44, 79 S.Ct. at 778–79. For example, false and malicious statements made in the course of a labor dispute, if injurious to reputation, may be actionable under state law even though such statements themselves may be unfair labor practices. *See Linn v. United Plant Guard Workers,* 383 U.S. 53, 63, 86 S.Ct. 657, 663, 15 L.Ed.2d 582 (1966). In addition, the Act does not preempt a state action for intentional infliction of emotional distress, even though a major part of the cause of action arguably is an unfair labor practice. *See Farmer v. Carpenters,* 430 U.S. 290, 302–03, 97 S.Ct. 1056, 1064–65, 51 L.Ed.2d 338 (1977). The Supreme Court has also held that the Act does not preempt a state trespass action against picketing because the action would concern only the location of the picketing while the unfair labor practice would focus on the object of the picketing. *Sears, Roebuck,* 436 U.S. at 198, 98 S.Ct. at 1758.

## C.

### 1.

██ Applying those tests, we conclude the trial court correctly applied the doctrine of preemption to Chavez's claims for wrongful discharge and interference with contract. The gravamen of each legal theory relied upon by Chavez is that appellees discharged him because he refused to treat non-union employees more favorably than union employees. As we concluded above, such conduct by appellees arguably constitutes an unfair labor practice that falls within the Act's prohibitions. *See* 29 U.S.C.A. §§ 157, 158(a)(1), (a)(3). Similar claims, whether delineated breach of contract, wrongful discharge, or wrongful interference with contract, have been consistently held preempted.

We regard *Operating Eng'rs v. Jones* as particularly instructive. In that case, the Supreme Court noted that Jones, a supervisor, conceded that the Act preempted his state breach of contract claim and held that the Act also preempted a claim that the union tortiously interfered with his employment contract. 460 U.S. at 682, 103 S.Ct. at 1462.

Jones, a supervisor for Georgia Power Company, started working for the company on June 12, 1978. By agreement, Jones took vacation after his second day of work for one week. When he returned on June 20, 1978, the company discharged him. Jones believed that the union bargaining agent for the operating engineers union had persuaded the company to discharge him because of a decision Jones made years earlier to work for a non-union employer. Jones filed an unfair labor practice charge against the union with the Regional Director of the NLRB, who responded that Jones's charge did not warrant further proceedings.

Rather than appealing to the General Counsel of the NLRB, Jones filed a complaint in state court alleging that the union had tortiously interfered with his employment contract and that the employer breached his contract of employment. The trial court dismissed the action, concluding that the Act preempted the state claims. The court of appeals reversed, holding that because the state "had a deep and abiding interest in protecting its citizens' contractual rights," and because the tort action was so unrelated to the Act's concerns, permitting the action to go forward would not interfere

breach of good faith and fair dealing, violation of public policy, and violation of California Labor Code); *Carlson v. Hutzel Corp.,* 183 Mich.App. 508, 455 N.W.2d 335 (1990) (finding no preemption when allegations threatened health, safety, and welfare of hospital patients and upholding public policy of adjudicating contractual disputes

within jurisdiction); *Betts v. University of Rochester,* 123 A.D.2d 496, 507 N.Y.S.2d 566 (1986) (finding no preemption in state breach of contract claim because action could be decided without considering alleged unfair labor practice and precluding plaintiff from offering evidence in that regard).

with the administration of the Act. *Id.* at 674–75, 103 S.Ct. at 1457–58. Furthermore, the court stated that the union's actions were not even arguably within the ambit of sections 7 and 8, thus eliminating the Act's preemption.

After the state supreme court denied review, the United States Supreme Court granted certiorari and reversed the state court of appeals. The Court concluded that Jones's complaint arguably fell within the ambit of the Act. The Court reasoned that

> a fundamental part of such a claim is that the Union actually caused the discharge and hence was responsible for the employer's breach of contract. Of course, this same crucial element must be proved to make out a [Section 8] case: the discharge must be shown to be the result of Union influence.

*Id.* at 682, 103 S.Ct. at 1462. The Court concluded that the risk the state action would interfere with the NLRB's jurisdiction was obvious and substantial. In addition, Jones's claim was of more than peripheral concern to the federal labor policy, and the claim was not so deeply rooted in local law that the state's interest in enforcing the law overrode the risk of interfering with federal labor law. *Id.* at 683, 103 S.Ct. at 1462–63; *see also, e.g., Iron Workers Union v. Perko,* 373 U.S. 701, 83 S.Ct. 1429, 10 L.Ed.2d 646 (1963) (common law tort action for interference with contract preempted because it focused on conduct arguably within the reach of the Act); *Lumber Prod. Indus. Workers,* 775 F.2d at 1049 (union action against management consultants for tortious interference with contract preempted by the Act).

Regardless of the label attached to his claims, Chavez cannot establish wrongful discharge or improper interference with his employment contract without showing the same crucial element as would be essential to establishing an unfair labor practice: he must show Copper State discharged him, or

Grimes obtained his discharge, because he refused to discriminate against union members. That element is of more than peripheral concern to federal labor law; it reflects and requires consideration of a central focus of the Act. We therefore conclude the trial judge did not err in granting judgment in appellees' favor on the tortious discharge and wrongful interference claims.

### 2.

◼ In their cross-appeal, Copper State and Grimes argue that the Act also preempts Chavez's breach of contract claim. We agree.

According to the complaint, Grimes attempted to funnel unfair labor practices through Chavez, and Copper State discharged Chavez for his refusal to favor non-union over union workers. Because he could be terminated only for cause, Chavez asserts, Copper State therefore breached his contract.[5] As we have previously determined, these allegations arguably fall under Section 8(a)(3) of the Act;[6] Chavez has simply couched this claim in terms of breach of an employment contract.

◼ However, application of the preemption doctrine does not depend on the legal theories in which Chavez chooses to frame his claim. *Morris v. Chem–Lawn Corp.,* 541 F.Supp. 479, 482 (E.D.Mich.1982); *see Lockridge,* 403 U.S. at 292, 91 S.Ct. at 1920, 1921. In *Morris,* an employee claimed that the company discharged her without good cause, thereby breaching her contract of employment. Upon examination of the employee's deposition, the court concluded that the employee's claim was based upon allegations that her employer discharged her for supporting union activities. The court held that the basis for the claim, regardless of the theory under which the employee brought it,

---

**5.** Copper State disputes whether the personnel manual on which Chavez relies applies to supervisors. Given our disposition of this issue, we do not reach that question.

**6.** Section 8(a)(3) states, in part, that "[i]t shall be an unfair labor practice for an employer ... by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization[.]"

involved unfair labor practices. The Act, therefore, preempted the state law claim.

Here, the material facts compel the same conclusion. Regardless of the theory under which Chavez seeks to proceed, the basis for his claim remains conduct that arguably constitutes an unfair labor practice. The crucial elements of Chavez's state law claims and the showing to establish an unfair labor practice are the same in all fundamental respects. The issue that the NLRB could have decided and the corresponding remedy were no different than that which Chavez asks the state court to decide: whether Copper State and Grimes engaged in unfair labor practices, and whether Chavez himself was thus entitled to an appropriate remedy. We believe that the holding of *Jones* instructs that, under such circumstances, we must apply the doctrine of preemption.[7]

### D.

Chavez appears to argue that the state court should assert jurisdiction because, if we conclude the NLRB arguably had jurisdiction over his claim, we will deprive him of a remedy. We cannot, however, assume jurisdiction on that basis.

■ First, whether the NLRB has jurisdiction over a claim is a question for the NLRB, not a state court, to determine. *Jones,* 460 U.S. at 681, 103 S.Ct. at 1461. To hold otherwise would require a state court to rule on the merits of the underlying claims to determine the appropriate forum. *See id.* at 682, 103 S.Ct. at 1462. *But see Sitek,* 587 F.Supp. at 1384 (assessing merits of case to demonstrate preemption of wrongful discharge claim).

■ Moreover, Chavez did have a remedy; he could have filed a complaint with the NLRB. *See* 29 C.F.R. § 101.2; *NLRB v. Local No. 42, Inter. Ass'n of Heat & Frost Insulators,* 469 F.2d 163, 165 (3d Cir.1972),

*cert. denied,* 412 U.S. 940, 93 S.Ct. 2776, 37 L.Ed.2d 399 (1973). Courts have consistently interpreted the Act to proscribe discharging a supervisor for refusing to commit unfair labor practices. *See Gerry's Cash Markets,* 602 F.2d at 1023. The fact that Chavez chose to rely on his wife's report that NLRB representatives indicated he could not obtain relief provides no basis for us to assume jurisdiction. Statements such as those described are not the equivalent of an NLRB determination that it would decline jurisdiction. "The task of making binding interpretations of the meaning of the Act is a judicial function, vested in the Board Members with ultimate power of review in the courts." *West Texas Utils. Co.,* 85 N.L.R.B. 1396, 1399 (1949); *see also Jones,* 460 U.S. at 680, 103 S.Ct. at 1460–61 (Jones failed to exhaust administrative remedies when he failed to appeal to the General Counsel after the NLRB's Regional Director rejected his complaint).

### V.

■ Chavez and appellees have requested attorneys' fees incurred from this appeal pursuant to A.R.S. section 12–341.01. We exercise our discretion and decline to award attorneys' fees.

### VI.

We find, as a matter of law, that the jurisdiction of the National Labor Relations Board preempts the state court's jurisdiction in this case. We therefore affirm the trial court's grant of partial summary judgment in favor of appellees and reverse the trial court's denial of summary judgment on the remaining breach of contract claim. We remand to the trial court with instructions to enter judgment for appellees.

---

7. The significant overlap in the facts central to the state claims and the federal labor claim distinguishes this case from *Windfield v. Groen Div., Dover Corp.,* 890 F.2d 764 (5th Cir.1989), on which Chavez relies. In *Windfield,* the court

concluded that the plaintiff's breach of contract claim involved a "discrete, narrow inquiry into the relationship between him and his former employer." *Id.* at 770. The same cannot be said here.

432

KLEINSCHMIDT, J., and
CHRISTOPHER SKELLY, J. Pro Temp.,*
concur.