25 P.3d 19

**Donald W. HILL, Plaintiff/Appellant,**

v.

**Timothy PETERSON and Susan Peterson, husband and wife, Defendants/Appellees.**

**No. 2 CA–CV 98–0153.**

Court of Appeals of Arizona, Division 2, Department B.

May 22, 2001.

As Corrected July 16, 2001.

---

Leonard, Felker, Altfeld, Greenberg & Battaile, P.C., by David J. Leonard, Peter B. Goldman, Tucson, for plaintiff/appellant.

Snell & Wilmer, L.L.P., by Russell B. Stowers and Erwin D. Kratz, Tucson, for defendants/appellees.

*OPINION*

ESPINOSA, Chief Judge.

¶ 1 Donald Hill appeals from the dismissal of the tortious interference with prospective advantage causes of action he had brought against Timothy and Susan Peterson after the trial court· determined that his causes of action were preempted by federal law. Because we conclude the claims are not preempted, we vacate the dismissal order.

**Facts and Procedural History**

¶ 2 The following facts are essentially undisputed. Hill, an oncologist, was hired in 1994 by Thomas Davis Medical Centers, P.C. (TDMC), which was subsequently purchased by FPA Medical Management of Arizona, Inc. In early 1997, Hill's physicians' union filed a claim with the National Labor Relations Board (NLRB) on behalf of Hill and other physicians, accusing FPA and TDMC of unfair labor practices under the National Labor Relations Act, 29 U.S.C.A. §§ 141 through 187 (the Act), a claim the NLRB found had merit. Hill resigned from TDMC in October 1997. In March 1998, he filed this action against FPA, its president and chief

executive officer· Timothy Peterson, and Peterson's wife Susan, claiming that, sometime after he resigned from TDMC, FPA and Peterson, acting on FPA's behalf, had interfered with his "business expectancy in being awarded [employment] contract[s] with Intergroup ... [and] Pacific Care" and that FPA had interfered with his "business expectancy in his negotiations with Arizona Oncology Associates."

¶ 3 Claiming that FPA and Peterson had also threatened to enforce "a covenant not to compete contained in [Hill's employment] contract with TDMC," Hill additionally sought a declaration that the covenant was unenforceable because, with his departure, TDMC no longer had an "oncology department and, thus, [had] no legitimate interest in depriving the public of [his] services"; FPA and TDMC had breached the agreement by constructively terminating his employment contract before he had resigned; and FPA and TDMC had sought to selectively enforce the covenant against him because of "his union activities" while he had been employed at TDMC.

¶ 4 The defendants filed a motion to dismiss the complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), Ariz. R.Civ.P., 16 A.R.S., contending the causes of action were preempted by the Act. They argued that, because Hill's allegations of constructive discharge and antiunion bias in his anticompetition claim had been raised on his behalf by his union in both the prior and a pending action before the NLRB, all his state causes of action were preempted by the Act.[1] Although Hill offered to strike from his complaint the two bases for declaring the noncompetition covenant unenforceable that described unfair labor practices under the Act, the trial court nevertheless found all the causes of action preempted and dismissed them. After Hill filed his notice of appeal from the judgment, FPA filed for bankruptcy and the noncompetition covenant expired. Accordingly, the parties agree that all causes of action against FPA and the anticompetition cause of action are moot and that the

---

1. The NLRB subsequently declined to pursue the then-pending claims without indicating whether it had done so because it lacked jurisdiction to

consider them or because they simply lacked merit.

only remaining causes are those alleging interference with prospective advantage against Peterson.

### Discussion

■■■ ¶ 5 Whether the Act preempts a state claim is a question of law subject to our *de novo* review, *Vincent v. Trend Western Technical Corp.*, 828 F.2d 563 (9th Cir.1987), as is a trial court's determination of subject matter jurisdiction. *Fairway Constructors, Inc. v. Ahern*, 193 Ariz. 122, 970 P.2d 954 (App.1998). The Act was promulgated in an effort to achieve uniform and effective enforcement of a national labor policy, leaving to the courts the task of determining whether particular state causes of action can coexist with the " 'comprehensive amalgam of substantive law and regulatory arrangements' " the Act prescribes. *Chavez v. Copper State Rubber of Arizona, Inc.*, 182 Ariz. 423, 427, 897 P.2d 725, 729 (App.1995), *quoting Local 926 Int'l Union of Operating Eng'rs v. Jones*, 460 U.S. 669, 675, 103 S.Ct. 1453, 1458, 75 L.Ed.2d 368, 375 (1983).

> Many courts have addressed the Act's preemptive scope in cases in which employees assert state causes of action in addition to, or in lieu of, unfair labor practice claims before the NLRB[.] The critical inquiry in these situations is whether the conduct at issue in the state cause of action is identical to that which *could be* presented to the NLRB.

*Chavez*, 182 Ariz. at 428, 897 P.2d at 730 (emphasis added).

¶ 6 The narrow issue before us, then, is whether a former employee, such as Hill, can bring a claim before the NLRB alleging that, after he resigned from his employment, his former employer tortiously interfered with his contractual relations with a prospective employer. If the Act does not cover such an individual or permit such a claim, it obviously does not preempt the individual's state cause of action against the former employer or its agents. In addressing this question, an issue of first impression in this state and, apparently, elsewhere, a brief overview of federal labor law is instructive.

¶ 7 The Act provides that it shall be an unfair labor practice for an employer "to interfere with, restrain, or coerce *employees* in the exercise of the[ir] rights [to organize, form, join, or assist labor organizations or to bargain collectively as] guaranteed in section 157" of the Act or to "discriminat[e] in regard to hire or tenure of employment or any term or condition of employment [in order] to encourage or discourage membership in any labor organization." 29 U.S.C.A. § 158(a)(1), (a)(3) (emphasis added). The Act defines an "employee" to include "any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment." 29 U.S.C.A. § 152(3).

■■ ¶ 8 This broad definition prevents an employer from unilaterally ending the employer/employee relationship, and as a result, the jurisdiction of the NLRB, by simply refusing to reinstate a striking worker. *See NLRB v. Transport Co. of Texas*, 438 F.2d 258 (5th Cir.1971) (as "employees" under Act, unfair-labor-practice strikers entitled to reinstatement as new jobs created or replacement workers depart before new applicants can be hired). Consequently, workers who believe their employers have unfairly refused to reinstate them can file charges under the Act seeking reemployment with back pay so long as the workers stopped working in response to a labor dispute or unfair labor practice and have not secured comparable employment elsewhere. *NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375, 88 S.Ct. 543, 19 L.Ed.2d 614 (1967); *NLRB v. Low Kit Mining Co.*, 3 F.3d 720 (4th Cir.1993); *Waterbury Hosp. v. NLRB*, 950 F.2d 849 (2d Cir. 1991); *Transport Co. of Texas*.

■■ ¶ 9 But, because the Act does not offer aggrieved workers the option of seeking damages, reinstatement with back pay is the sole monetary remedy available under federal law for unfairly terminated workers. *See* 29 U.S.C.A. § 160(c); *Linn v. United Plant Guard Workers of America, Local 114*, 383 U.S. 53, 63, 86 S.Ct. 657, 663, 15 L.Ed.2d 582, 590 (1966) (Act not concerned with personal injury to workers; NLRB "can award no damages, impose no penalty, or give any

other relief to ... defamed [workers]"); *see also Ring v. River Walk Manor, Inc.,* 596 F.Supp. 393 (D.Md.1984). Although workers might prefer not to seek reinstatement with employers who have denied them reemployment because of their union activities or affiliations, preferring instead to seek money damages in state court, the Act preempts such claims. *See Chavez* (it is well established that Act preempts wrongful discharge and interference with contractual relations causes of action brought in state court by workers discharged for conduct arguably protected by Act).

¶ 10 Furthermore, although the Act precludes employers from refusing to rehire "employees" who have voluntarily resigned their employment in connection with a labor dispute or in response to an unfair labor practice, such workers are not protected under the Act from *future* discrimination by their former employers. *See Halstead Metal Prods. v. NLRB,* 940 F.2d 66, 70 (4th Cir. 1991) ("Because [worker] actually resigned, he was not protected by the Act from future discrimination, even if the discrimination arose from participation in·concerted activities with employees who were protected by the Act[; h]owever, once [worker] reapplied for employment ..., [employer] had to treat [worker] as if he were an employee for·purposes of the Act.") (citation omitted).

¶ 11 Turning now to the case before us, the Petersons argue that, because Hill admitted in his complaint that he had been forced to leave TDMC in response to TDMC's and FPA's unfair labor practices and had not yet obtained comparable employment elsewhere, he falls within the definition of "employee" in § 152(3) of the Act, a proposition with which we do not disagree. Assuming he did then and still does fall within that definition, Hill is protected from discrimination under the Act should he seek reemployment with FPA. *See Fleetwood Trailer, Low Kit Mining; Waterbury Hosp.* The protection is limited however—he is not protected from any retaliatory actions by FPA unless and until he chooses to return to the company. *Halstead.*

¶ 12 The Petersons offer no authority, nor have we found any, supporting their bald assertion that the NLRB is concerned with labor relations between parties who no longer have any relationship at all. Were the Act actually intended to protect workers who have terminated their employment from all subsequent forms of discriminatory conduct committed by their former employers in retaliation for the workers' prounion sentiments or activities while on the job, we see no reason why it would limit such protection only to those workers who have stopped working amidst union or labor strife and have not secured new employment elsewhere. That distinction makes sense if the Act were intended to protect workers' rights to be rehired but makes little sense otherwise. Of greater concern, because the NLRB cannot order an employer to pay damages or otherwise penalize the employer for its actions that personally injure a worker, *see Linn,* employers could interfere with their former employees' ability to secure new employment at will, safe in the knowledge that they ·would suffer no adverse consequences as a result of the workers' NLRB claims. We reject any construction that would produce such a result.

¶ 13 For the reasons stated above, we conclude the Act does not cover, and thus does not preempt, claims by former workers, even those defined as employees, alleging that, after they left their jobs, their former employers tortiously interfered with their attempts to secure new employment in retaliation for their prior union activities or affiliations. The trial court therefore erred in dismissing Hill's tortious interference with prospective advantage causes of action against the defendants as being federally preempted. The dismissal order is vacated, and the case is remanded for further proceedings consistent with this decision.

HOWARD, P.J., and DRUKE, J., concur.