35 P.3d 417

Donald W. HILL, Plaintiff/Appellant,

v.

Timothy PETERSON and Susan
Peterson, husband and wife,
Defendants/Appellees.

No. 2 CA–CV 98–0153.

Court of Appeals of Arizona,
Division Two, Department B.

Nov. 27, 2001.

**364**

Leonard Felker Altfeld Greenberg & Battaile, P.C., By David J. Leonard and Peter B. Goldman, Tucson, for Plaintiff/Appellant.

Snell & Wilmer, L.L.P., By Russell B. Stowers, Erwin D. Kratz, and Sarah L. Townsend, Tucson, for Defendants/Appellees.

## *OPINION*

ESPINOSA, Chief Judge.

¶ 1 Defendants/appellees Timothy and Susan Peterson asked us to reconsider our May 22, 2001, opinion vacating the trial court's order dismissing plaintiff/appellant Donald Hill's tortious interference with prospective advantage causes of action against them. *Hill v. Peterson,* 200 Ariz. 217, 25 P.3d 19 (App.2001). The Petersons contend we incorrectly found Hill's causes of action not preempted by the National Labor Relations Act, 29 U.S.C.A. §§ 141 through 187 (the Act), arguing that the jurisdiction of the National Labor Relations Board (NLRB) depends not on the parties' relationship, but rather, on their conduct and that our opinion, which relied on *Halstead Metal Products v. NLRB,* 940 F.2d 66 (4th Cir.1991), was inconsistent with other federal cases. Because we agree that the conduct alleged is dispositive of the preemption issue and presents a narrower ground for resolving this case, *see State v. Leyva,* 184 Ariz. 439, 909 P.2d 506 (App.1995), we grant the Petersons' motion. However, because the trial court can adjudicate Hill's tortious interference with prospective advantage causes of action without determining whether Peterson committed an unfair labor practice under the Act, the ultimate result does not change. Accordingly, we withdraw our previous opinion and replace it with this one, vacating the trial court's dismissal of Hill's causes of action and remanding the matter for further proceedings consistent with this decision.

### Facts and Procedural History

¶ 2 The following facts are essentially undisputed. Hill, an oncologist, was hired in 1994 by Thomas Davis Medical Centers, P.C. (TDMC), which was subsequently purchased by FPA Medical Management of Arizona, Inc. In early 1997, Hill's physicians' union filed a claim with the NLRB on behalf of Hill and other physicians, accusing FPA and TDMC of unfair labor practices under the Act, a claim the NLRB found had merit.

Hill resigned from TDMC in October 1997. In March 1998, he filed this action against FPA, its president and chief executive officer, Timothy Peterson, and his wife, Susan, claiming that, sometime after he resigned from TDMC, FPA and Peterson had interfered with his "business expectancy in being awarded [employment] contract[s] with Intergroup ... [and] Pacific Care"[1] and that FPA had interfered with his "business expectancy in his negotiations with Arizona Oncology Associates."

¶3 Claiming that FPA and Peterson had also threatened to enforce "a covenant not to compete contained in [Hill's employment] contract with TDMC," Hill additionally sought a declaration that the covenant was unenforceable because, with his departure, TDMC no longer had an "oncology department and, thus, [had] no legitimate interest in depriving the public of [his] services." Hill further claimed that FPA and TDMC had breached the agreement by constructively terminating his employment contract before he resigned and that FPA and TDMC had sought to selectively enforce the covenant against him because of "his union activities" while he had been employed at TDMC.

¶4 The defendants moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Ariz. R. Civ. P., 16 A.R.S., Pt. 1, contending the causes of action were preempted by the Act. They argued that, because Hill's allegations of constructive discharge and antiunion bias in his anticompetition claim had been raised on his behalf by his union in both the prior and a pending action before the NLRB, all his state causes of action were preempted.[2] Although Hill offered to strike from his complaint the two bases for declaring the noncompetition covenant unenforceable that described unfair labor practices under the Act, the trial court nevertheless found all the causes of action preempted and dismissed them. After Hill filed his notice of appeal from the judgment, FPA filed for bankruptcy and the noncompetition cove-

nant expired. Accordingly, the parties agree that all causes of action against FPA and the anticompetition cause of action are moot and that the only remaining causes are those alleging interference with prospective advantage against Peterson.

### Discussion

¶5 Whether the Act preempts a state claim is a question of law subject to our *de novo* review, *Vincent v. Trend Western Technical Corp.,* 828 F.2d 563 (9th Cir.1987), as is a trial court's determination of subject matter jurisdiction. *Fairway Constructors, Inc. v. Ahern,* 193 Ariz. 122, 970 P.2d 954 (App.1998). The Act was promulgated in an effort to achieve uniform and effective enforcement of a national labor policy, leaving to the courts the task of determining whether particular state causes of action can coexist with the " 'comprehensive amalgam of substantive law and regulatory arrangements' " the Act prescribes. *Chavez v. Copper State Rubber of Arizona, Inc.,* 182 Ariz. 423, 427, 897 P.2d 725, 729 (App.1995), *quoting Local 926, Int'l Union of Operating Eng'rs v. Jones,* 460 U.S. 669, 675, 103 S.Ct. 1453, 1458, 75 L.Ed.2d 368, 375 (1983).

> Many courts have addressed the Act's preemptive scope in cases in which employees assert state causes of action in addition to, or in lieu of, unfair labor practice claims before the NLRB. The critical inquiry in these situations is whether the conduct at issue in the state cause of action is identical to that which *could be* presented to the NLRB.

*Chavez,* 182 Ariz. at 428, 897 P.2d at 730 (emphasis added).

¶6 In *San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), the Supreme Court held that an employer's action for damages against union picketers, based on a state law cause of action for unfair labor practice, was preempted by the NLRA. "When it is clear

---

1. We presume counsel meant "PacifiCare" and will use that proper designation in this opinion.

2. The NLRB subsequently declined to pursue the then-pending claims without indicating whether

it had done so because it lacked jurisdiction to consider them or because they simply lacked merit.

or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the [NLRA], or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield ... [so as not to] create potential frustration of national purposes." *Id.* at 244, 79 S.Ct. at 779, 3 L.Ed.2d at 782–83. But, in *Farmer v. United Brotherhood of Carpenters and Joiners of America, Local 25,* 430 U.S. 290, 304, 97 S.Ct. 1056, 1065, 51 L.Ed.2d 338, 352–53 (1977), the Court upheld a state cause of action for intentional infliction of emotional distress arising out of union activities, stating that the "potential for interference is insufficient to counterbalance the legitimate and substantial interest of the State in protecting its citizens.... [T]he state-court tort action can be adjudicated without resolution of the 'merits' of the underlying labor dispute."

¶ 7 In another union picketing case, *Sears, Roebuck and Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), Sears brought a state trespass action against union members who were demonstrating on its property. The Court stated that the critical inquiry was whether the controversy presented in the state court was identical to or different from that which could have been presented to the NLRB, concluding that "whether the picketing had an objective proscribed by federal law was irrelevant to the state claim" that only challenged the location of the picketing. *Id.* at 198, 98 S.Ct. at 1758, 56 L.Ed.2d at 226. Because the state court was not required to interpret or enforce federal labor laws in deciding the trespass action, the Supreme Court concluded that Sears' cause of action was not preempted. *See also Richardson v. Kruchko & Fries,* 966 F.2d 153, 157 (4th Cir.1992), *quoting Lumber Prod. Indus. Workers Local # 1054 v. West Coast Indus. Relations Ass'n,* 775 F.2d 1042, 1049 (9th Cir.1985) ("[A] state-law claim is preempted 'if the conduct relied on to prove a crucial element in the state action is conduct that is arguably covered by the NLRA.' ").

■ ¶ 8 The proper issue before us, then, is whether Hill's cause of action for tortious interference with prospective business relations against Peterson is premised upon Peterson's having engaged in an unfair labor practice under the Act. To establish a *prima facie* case of intentional interference with contractual relations, a plaintiff must prove the existence of a valid contractual relationship or business expectancy; the interferer's knowledge of the relationship or expectancy; intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted. *Wallace v. Casa Grande Union High School Dist. No. 82 Bd. of Governors,* 184 Ariz. 419, 909 P.2d 486 (App.1995). Furthermore, the interference must be "improper as to motive or means" before liability will attach. *Wagenseller v. Scottsdale Mem'l Hosp.,* 147 Ariz. 370, 388, 710 P.2d 1025, 1043 (1985). Whether a particular action is improper is determined by a consideration of seven factors found in the Restatement (Second) of Torts § 767 (1979):

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference and

(g) the relations between the parties.

*Wagenseller,* 147 Ariz. at 387, 710 P.2d at 1042. However, someone who interferes with the prospective contractual rights of another "for a legitimate competitive reason does not become a tort-feasor simply because he may also bear ill will toward his competitor." *Bar J Bar Cattle Co., Inc. v. Pace,* 158 Ariz. 481, 485, 763 P.2d 545, 549 (App.1988); *see also* Restatement (Second) of Torts § 768(1)(d) (1979).

■ ¶ 9 Count one of Hill's complaint alleged that FPA, through Intergroup, had tortiously interfered with his business expectancy with Arizona Oncology Associates

(AOA) based on Intergroup's advising AOA that Intergroup would not look favorably on doing business with AOA should it enter into a relationship with Hill. As the Petersons point out, this count does not allege any wrongdoing by Peterson and is thus of no moment here. Count four alleged that FPA and TDMC had selectively enforced the anti-competition clause against Hill "on account of the constructive termination of his contract" and "due to his union activities" and that "Peterson and [FPA] had used the threat of enforcement [of the anticompetition clause] to tortiously interfere with prospective business relationships." Because the time limit in the anticompetition clause has since expired, this claim is now moot; in any event, it clearly would be preempted.

 ¶ 10 Counts two and three alleged that Hill had business expectancies with Intergroup and PacifiCare, that Peterson and FPA had tortiously interfered with those expectancies, and that Intergroup and PacifiCare had denied him contracts. Hill argued in his opposition to the motion to dismiss that these counts do not allege that Peterson acted in retaliation for Hill's union activities, but rather, pursuant to Peterson's desire "to prevent the loss of lucrative cancer patient accounts by forcing a competitor, Donald Hill, out of their market." Hill further asserted that Peterson's motive for interfering with Hill's business expectancies with Intergroup and PacifiCare was in furtherance of preserving their financial positions and that his conduct was independent of any conduct covered by the Act. We agree that these claims could be adjudicated without deciding whether Peterson committed an unfair labor practice. *Compare Farmer* (state court could adjudicate intentional infliction of emotional distress cause of action without considering merits of labor dispute—whether union had threatened or discriminated against plaintiff employee), *and Linn v. United Plant Guard Workers of America, Local 114,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) (intentional circulation of defamatory material known to be false not protected under Act), *with Chavez* (employee's state

claims for wrongful discharge and interference with contract preempted when based upon employer's conduct constituting unfair labor practice). Moreover, federal preemption considerations are implicated to a greater extent when the labor-related activity is clearly protected by the Act than when, as here, it might be prohibited. *See Sears.*

 ¶ 11 The Petersons also argue that, because Hill's claim was presented to the NLRB, it is automatically preempted. Relying on *Volentine v. Bechtel, Inc.,* 27 F.Supp.2d 728 (E.D.Tex.1998), the Petersons assert that a plaintiff's state law cause of action is preempted simply if it has been raised in the NLRB for adjudication. Their reliance, however, is misplaced. The *Volentine* court refused to adopt this position, stating that it would not "throw out a case on a mere 'suggestion' of law—particularly when its own circuit has been silent on this possible 'suggestion.' " *Id.* at 733–34.[3] *But see Parker v. Connors Steel Co.,* 855 F.2d 1510, 1517 (11th Cir.1988) ("By initially pursuing relief with the NLRB the employees have implicitly recognized the Board's jurisdiction over their claims."). We note that, while NLRB preemption is broad, it is not without limits, as suggested by the countervailing policy of affording state adjudication of matters involving conduct that is "merely [a] peripheral concern" of the Act or involving "interests [that are] deeply rooted in local feeling and responsibility." *Garmon,* 359 U.S. at 243–44, 79 S.Ct. at 779, 3 L.Ed.2d at 782; *see also Jones.*

### Disposition

¶ 12 The Petersons' motion for reconsideration is granted to the extent that we withdraw our May 22, 2001, opinion and replace it with this one. Hill's causes of action in counts two and three do not sufficiently implicate the Act so as to require preemption. We therefore vacate the trial court's order dismissing these two claims and remand the case for further proceedings. In so doing,

---

**3.** The "suggestion" comes from language in *Sears* that NLRB jurisdiction does not preempt state court jurisdiction when the aggrieved party

has not had a reasonable opportunity to invoke NLRB jurisdiction or has been unable to persuade the adversary to do so.

we do not suggest any opinion on the merits of Hill's causes of action.

HOWARD, P.J. and DRUKE, J., concurring.