74 P.3d 250

**CITY OF PHOENIX, a political subdivision, Plaintiff–Appellant, Cross Appellee,**

v.

**The ARIZONA DEPARTMENT OF ENVIRONMENTAL QUALITY; Jacqueline Schafer, Director of the Arizona Department of Environmental Quality, in her official capacity, Defendant–Appellee,**

**Industrial Waste Utilization, Inc., a California corporation; Innovative Waste Utilization, L.L.C., an Arizona limited liability company; and RMH Properties, L.C., an Arizona limited liability company, Defendants–Appellees, Cross Appellants.**

No. 1 CA–CV 02–0635.

Court of Appeals of Arizona, Division 1, Department E.

July 31, 2003.

Garbarino, Judge of the Arizona Court of Appeals, was designated to sit in Justice Hurwitz's place.

Office of the City Attorney, Peter Van Haren, Phoenix City Attorney by Gary Verburg, and Craig J. Reece, Assistant City Attorneys, Phoenix, Attorneys for Plaintiff–Appellant, Cross Appellee, City of Phoenix.

Terry Goddard, Attorney General by James Skardon, Assistant Attorney General, Phoenix, Attorneys for Defendant–Appellee, Arizona Department of Environmental Quality.

Gallagher & Kennedy, P.A. by David J. Armstrong, Christopher S. Welker, Phoenix, Attorneys for Defendant–Appellee, Cross Appellant, Industrial Waste Utilization, Inc. and Innovative Waste Utilization, L.L.C.

Steptoe & Johnson by Karl M. Tilleman, David R. Nelson, Phoenix, Attorneys for Defendant–Appellee, Cross Appellant, RMH Properties, L.L.C.

## OPINION

WINTHROP, Judge.

¶ 1 This appeal arises from the trial court's dismissal with prejudice of a first amended complaint filed by the City of Phoenix ("City") challenging a permit issued by the Arizona Department of Environmental Quality ("ADEQ") to Industrial Waste Utilization

("IWU") and RMH Properties ("RMH")[1] authorizing IWU and RMH to own and operate a hazardous waste treatment and storage facility in Phoenix.[2] For the reasons that follow, we affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

¶2 On April 12, 2001, ADEQ issued a permit to IWU authorizing the treatment and storage of hazardous waste. The City filed a petition for review with ADEQ on May 10, 2001, seeking an administrative hearing challenging the issuance of such permit. One week later, the City filed a parallel action in superior court, naming ADEQ, IWU and RMH, and alleging (1) that Arizona's administrative review procedures (Arizona Revised Statutes ("A.R.S.") sections 41–1092 through 41–1092.12 ("Article 10")) were preempted because they had not yet been approved by the United States Environmental Protection Agency ("EPA") pursuant to the Federal Resource Conservation and Recovery Act ("RCRA") (Count I); (2) that Article 10 conflicted with, and voided, the ADEQ regulatory rule governing appeals of hazardous waste permit decisions found at Arizona Administrative Code ("A.A.C.") R18–8–271(Q) and A.A.C. R18–8–271(N) (Count II); and (3) that issuance of the permit was arbitrary and capricious, an abuse of discretion and in excess of ADEQ's authority (Count III).

¶3 ADEQ, IWU, and RMH each moved to dismiss the complaint, arguing that the City had failed to exhaust its administrative remedies and that the complaint failed to state a claim upon which relief could be granted. ADEQ and IWU responded to the merits of Count I, contending that Article 10 is not preempted by the RCRA. In addition, ADEQ moved to dismiss Count II, arguing that Article 10 did not conflict with any Rule of the A.A.C. RMH also argued that the complaint failed to state a claim against RMH because the City sought no relief against it.

None of the named defendants responded to the merits of Count III.

¶4 The City responded to each motion arguing, *inter alia,* that its action fell within exceptions to the general rule that a party must first exhaust its administrative remedies before bringing suit in superior court. It further argued that exhaustion of remedies was not required for Counts I and II because such claims did not fit within the definition of an appealable agency action. The City contended that ADEQ lacked the jurisdictional authority to issue or review the disputed permit. The superior court scheduled oral argument, but some time before the hearing date, the City amended its complaint.

¶5 The City's First Amended Complaint ("FAC") was substantively identical to its initial complaint. Again, the City argued that Article 10 is preempted by the RCRA, that Article 10 conflicts with the A.A.C. R18–8–271, and that ADEQ's issuance of a permit to IWU and RMH was an abuse of discretion, and an arbitrary and capricious decision. In response, ADEQ and IWU filed motions to dismiss, incorporating their previous memoranda, attacking Counts I and II of the FAC both on the merits and on the City's failure to exhaust its administrative remedies.

¶6 Additionally, RMH disputed the City's argument that it may be an operator of the hazardous materials facility. In response, the City argued that RMH, as a landowner and signatory to the permit application, was an indispensable party and could not be dismissed. The City expanded on this argument in its response to ADEQ's motion to dismiss, claiming that not only was RMH an indispensable party to the superior court action but also to the pending administrative proceeding. Despite making such claim, the City never took any steps to add RMH to the ongoing administrative proceeding.

---

1. RMH owns the property where the disputed hazardous materials facility is located. IWU is the operator of the facility. Both parties are signatories to the permit application; however, the permit was formally issued to IWU.

2. IWU and RMH also cross appeal from the trial court's refusal to award attorneys' fees. We address the cross appeal in a separate memorandum decision. See Rule 28(g), Arizona Rules of Civil Appellate Procedure ("ARCAP").

¶ 7 Oral argument was held before Judge John Sticht on November 5, 2001.[3] While the superior court reviewed the pleadings and arguments regarding the motions to dismiss, the Administrative Law Judge ("ALJ") issued his Recommended Decision in the parallel administrative proceeding on January 7, 2002, upholding ADEQ's issuance of the permit to IWU. The Recommended Decision was adopted by the Director of ADEQ on February 8, 2002, thereby exhausting the City's administrative remedies.

¶ 8 Rather than move for leave to amend its FAC to allege that it had exhausted its administrative remedies, the City filed a separate judicial appeal of the ALJ's January 7 decision.[4] On April 26, 2002, Judge Sticht issued an unsigned minute entry granting defendants' motions to dismiss and found that:

> Although numerous arguments are raised, the core of the motions to dismiss is whether the [City's] argument regarding preemption is valid. . . .

> The Court agrees that there is neither explicit nor implied preemption. *See Boyes v. Shell Oil Products Company,* 199 F.3d 1260 (11th Cir.2000). The Court also agrees that the review process does not conflict with the RCRA because the RCRA does not mandate an administrative review process. Thus, the Court concludes that Article 10 is not preempted by the RCRA. As to the remaining arguments, the Court does not find the [City's] positions persuasive.

¶ 9 Thereafter, on June 4, 2002, the City filed a Motion to Transfer and Consolidate Related Cases, arguing that the judicial administrative appeal and the instant superior court action asserted essentially the same grounds for reversing the issuance of the permit. IWU and RMH objected to the

City's motion, IWU lodged a Proposed Form of Judgment, and both IWU and RMH moved for an award of attorneys' fees and costs. The City objected to the proposed judgment, arguing that any dismissal should be without prejudice because Judge Sticht had dismissed the case based solely on the City's failure to exhaust administrative remedies.

¶ 10 On July 16, 2002, Judge Pendleton Gaines, who was assigned this matter following Judge Sticht's retirement, denied the City's Motion to Transfer and Consolidate the Related Cases, denied RMH and IWU attorneys' fees, and entered a final judgment dismissing the case in favor of ADEQ, IWU and RMH. Although Judge Gaines' order was substantially similar to Judge Sticht's minute entry, it specifically added that the dismissal was with prejudice on all three counts. Notwithstanding the pendency of the judicial administrative appeal in superior court, the City filed its Notice of Appeal from the final judgment signed by Judge Gaines. This court has jurisdiction pursuant to A.R.S. § 12–2101(B).

## ISSUES ON APPEAL

¶ 11 Although the City purports to raise seven separate issues on direct appeal, we address in this opinion the following two questions: (1) Is Article 10 preempted by the RCRA; and (2) Does Article 10 conflict with A.A.C. R18–8–271(N) and (Q)?[5]

## ANALYSIS

### I. RCRA Does Not Preempt Article 10.

¶ 12 The City contends in Count I of its FAC that the RCRA preempts Arizona's revised administrative hearing procedures. We disagree. The City's argument fails be-

---

**3.** The City filed a motion for partial summary judgment with respect to Count I (preemption) on September 12, 2001. The parties stipulated that the motion for partial summary judgment could be considered with defendants' motions to dismiss. Summary judgment was denied on March 7, 2002.

**4.** Such judicial appeal of the ALJ's decision was pending in superior court on the date this opinion was issued.

**5.** Additional issues, including whether the City was required to exhaust its administrative remedies before seeking special action review of the issuance of the permit, and whether the trial court erred in dismissing all of the City's claims with prejudice, along with the cross appeal, have been addressed in a separate memorandum decision. See Rule 28(g), ARCAP.

cause the RCRA does not expressly preempt Article 10, does not preclude supplemental state laws such as Article 10, and does not conflict with Article 10.

¶ 13 We review claims of federal preemption *de novo*. *Hill v. Peterson*, 201 Ariz. 363, 365, ¶ 5, 35 P.3d 417, 419 (App. 2001). Preemption exists when state law "stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress." *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 373, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000) (citation omitted). The goal in a preemption case is to ascertain whether state laws and regulations are "consistent with the structure and purpose of the [federal] statute as a whole." *Gade v. National Solid Wastes Mgt. Ass'n*, 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992). Ultimately, the intent of Congress will determine whether "federal law preempts state law." *Id.* at 96, 112 S.Ct. 2374.

¶ 14 Although the Supreme Court recognizes three types of preemption—express or explicit preemption, field preemption, and conflict preemption—only conflict preemption is applicable to the RCRA. *See Boyes v. Shell Oil Prods.*, 199 F.3d 1260 (11th Cir.2000)(explaining that the RCRA does not explicitly preempt state law or seek to occupy the field; rather it contemplates some state action). Thus, the question in this case is whether Arizona's administrative procedures contained in Article 10 conflict with the RCRA.

¶ 15 Congress enacted the RCRA in 1976 "to promote the protection of health and the environment" 42 U.S.C § 6902(a). The RCRA is a comprehensive statute governing the treatment, disposal, and storage of hazardous waste material. *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996). The statute is somewhat unique, however, because it allows states to "opt out" of the federal law if the EPA formally approves a substitute state regulatory program for the handling of hazardous wastes. 42 U.S.C. § 6991(c)(d)(2).[6] The plain result of such EPA approval is that

the state program "essentially replaces the federal regulations, and no conflict between the state and federal program will exist." *Boyes*, 199 F.3d at 1265.

¶ 16 Arizona is one of several states to have its hazardous materials program approved by the EPA. See 40 C.F.R. § 272.151(a). In 1985, Arizona's previous administrative procedures, found at A.A.C. R18–8–271, were expressly approved by the EPA in 40 C.F.R. § 272.151(b)(2)(ii). Arizona Administrative Code Rule 18–8–271(Q), however, has since been superceded by Article 10. Despite the RCRA's requirement that subsequent changes to the state program be approved by the EPA, Article 10 has not yet received such approval.

¶ 17 The City argues that Arizona's failure to obtain formal EPA approval of Article 10 creates a *prima facie* conflict with the RCRA, and that it need not demonstrate any additional substantive conflict. In support, the City relies on *Gade v. National Solid Wastes Mgt. Ass'n*, 505 U.S. 88, 112 S.Ct. 2374 (1992). The City contends that *Gade* mandates that each and every provision of a state's regulatory program must be approved by the appropriate federal agency; if not, such state regulation is preempted by the relevant federal law. We believe that the City's reliance on *Gade* is misplaced.

¶ 18 *Gade* is distinguishable from the issues in the case for a variety of reasons. First, the Court in *Gade* interpreted the Occupational Health and Safety Act and its corresponding federal regulations ("OSHA"), not the RCRA. Second, even if we assume that an analysis of OSHA is applicable to our review of the RCRA, significant differences exist in *Gade* that make it inapplicable to this discussion.

¶ 19 The City relies on *Gade* because, like the RCRA, OHSA allows states to "opt out" of the federal program upon approval of a corresponding state regulatory scheme. The question in *Gade* was whether Illinois could implement a testing and licensing requirement for employees who handle certain waste materials. The *Gade* Court explained that a state must first obtain federal approv-

---

6. Program revisions must also be approved by    the EPA. See 40 C.F.R. § 271.21(b).

al, from the Secretary of Labor, before it attempts to regulate issues concerning worker safety. 505 U.S. at 90, 112 S.Ct. 2374.

¶ 20 Unlike the case at bar, however, Illinois had never received any federal approval to operate an OSHA-equivalent plan within the state. Instead, the disputed legislation sought to provide a piecemeal supplement to the existing federal laws. Such is not the case here. Unlike the facts in *Gade*, the EPA already explicitly approved Arizona's regulatory scheme to act in lieu of the RCRA. Moreover, Article 10, although it alters the administrative process slightly, does not affect the already existing, and EPA-approved, substantive requirements of Arizona's treatment and storage of hazardous materials, whereas the Illinois statute implemented substantive regulations on businesses and employees without federal approval. *See id.* at 97, 112 S.Ct. 2374 (explaining that no state may implement an occupational health or safety standard without the approval of the Secretary of Labor pursuant to OSHA).

¶ 21 We believe that *Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260, provides a more useful analysis of the preemption issue. *Boyes* directly examined preemption as it applies to the RCRA. In *Boyes*, the State of Florida implemented a program for the handling of underground storage tanks containing hazardous materials. Florida's regulatory scheme, like that of Illinois in *Gade*, was not approved by the appropriate federal agency. In its analysis, the court examined all three types of preemption, determined that the RCRA was only subject to conflict preemption, and analyzed whether the Florida statute, due to an actual conflict, was preempted by federal law.

¶ 22 Instead of immediately finding preemption based on the mere existence of a competing regulation, the court analyzed whether the law at issue in fact conflicted with the RCRA.[7] The court did not automatically find preemption based on Florida's lack

of federal approval; rather, it found that execution of the RCRA's purpose would be obstructed by the enforcement of the Florida law; thus federal law controlled. According to the court, "the RCRA sets a floor for regulation of hazardous waste, (citation omitted), and to allow the Florida program ... would lower that floor." 199 F.3d at 1260. With the *Boyes* framework of analysis in mind, we turn to the facts of this case.

¶ 23 As noted above, Article 10 has not yet been approved by the EPA. Therefore, to the extent that Article 10 actually conflicts with the RCRA, it is preempted. However, upon review of Article 10 and the RCRA, we find no meaningful conflict.

¶ 24 Article 10 establishes procedures for the administrative appeal of decisions by certain state agencies. A.R.S. § 41–1092.02. Specifically, it requires that all final ADEQ actions be initially contested pursuant to the procedures established in Article 10. Such procedures provide for an administrative hearing following issuance of a final agency decision in accordance with A.R.S. §§ 41–1092.02 thru 41–1092.06. Article 10 does not include any elements that are specifically related to the RCRA or Arizona's hazardous materials programs; instead, the statute is of general applicability within the scope of § 41–1092.02.

¶ 25 Review of the RCRA reveals that an administrative review procedure exists that provides a format for states to develop their own permit review protocols. See 40 C.F.R. § 124.19.[8] In that section, a final agency determination under the RCRA must first be appealed to the Environmental Appeals Board ("Board"). 40 C.F.R. § 124.19(a). In addition, only persons or entities who first filed comments on the initial draft permit may petition the Board for administrative review. *Id.* Board review and decision is a mandatory prerequisite before a party may seek judicial review of the final agency action. 40 C.F.R. § 124.19(e). The final agen-

---

7. Florida's law dealt with rights to obtain remediation relief in the event of petroleum contamination resulting from underground storage tanks. The law restricted an aggrieved party's ability to sue under the RCRA. *See Boyes*, 199 F.3d at 1260.

8. Although we acknowledge that the RCRA does not mandate that individual states adopt a particular administrative procedure, we believe a comparative analysis of the federal administrative process concerning permits issued pursuant to the RCRA is helpful.

cy action, for purposes of judicial review, occurs when the EPA issues its final decision, and all administrative remedies are exhausted. 40 C.F.R. § 124.19(f)(1).

¶ 26 When viewed together, Article 10 and 40 C.F.R. § 124.19 do not create a conflict sufficient to establish an obstruction of the purposes of the RCRA. Both Article 10 and 40 C.F.R. § 124.19 provide thirty days from which to appeal a final agency decision to an administrative review board. In addition, both provisions require exhaustion of administrative procedures before seeking judicial review of the final agency action. Moreover, whereas federal regulation requires that only parties who filed comments on, or participated in, the initial draft permit are allowed to petition for administrative review and thus ultimately obtain judicial review, no such qualifying preliminary objection is required under Article 10. Additionally, Arizona's Article 10 also provides dissatisfied parties the opportunity to participate in optional settlement conferences, an option not found in the federal regulation. We do not view these minor differences as obstructing the RCRA's purpose but, rather, augmenting it.

¶ 27 The City offers no tenable argument that Article 10 conflicts with the RCRA in a manner sufficient to create preemption. Instead, the City argues that simply because the EPA has not yet approved Article 10 for inclusion in the Arizona regulatory scheme, it automatically creates an impermissible conflict. We do not believe that was the intent of Congress or a logical interpretation of *Boyes.*

¶ 28 Finally, 40 C.F.R. § 272.151 offers additional evidence that Article 10 is not preempted by the RCRA. This section identifies both the sections of Arizona code that the EPA has approved as part of its hazardous materials regulatory scheme, as well as those that the EPA expressly declined to incorporate. See 40 C.F.R. § 272.152(b)(3)(i). Among the sections not

incorporated are A.R.S. §§ 49–901 through 49–905 (outlining procedures for the acquisition of a hazardous materials site, development of the facility, including limitations on operations within the facility and establishment of a state trust fund for the benefit of, among other matters, the states' risk management program); 49–922.01 (outlining penalties for hazardous waste manifest errors); 49–927 (establishing a hazardous waste management fund); 49–929 through 49–942 (establishing annual registration requirements, fees, penalties, and requiring a hearing for site selection by political subdivisions); and 49–944 (excluding hazardous waste facilities that receive funding under the Clean Water Act).

¶ 29 Under the City's argument, these unincorporated subsections relating to the management of Arizona's hazardous materials program would automatically conflict with the RCRA because they lack EPA approval. Instead, these subsections operate in conjunction with those provisions expressly approved by the EPA. Likewise, we believe that although the EPA approved an earlier version of administrative procedures for disputes concerning permits to handle and store hazardous materials, Article 10 does not provide such a significant alteration to create a conflict with the RCRA or its purposes and goals.[9]

## II. Article 10 Does Not Conflict With ADEQ Rules.

¶ 30 The City next argues that Article 10 conflicts with ADEQ's former administrative review procedures for permit appeals found at A.A.C. R18–8–271(Q) ("271(Q)") and R18–8–271(N) ("271(N)"). The crux of the City's argument is that (1) because Article 10 supercedes 271(Q), appeals of ADEQ permits have been eliminated and thus Article 10 is void, and that (2) Article 10 and 271(N) each provide different criteria for what constitutes

---

**9.** The City also argues that the trial court lacked subject matter jurisdiction to approve Article 10 as a revision to Arizona's hazardous waste program. The trial court, however, did not sanction Article 10 as a revision to the RCRA; instead, it merely determined, as it must, whether Article 10 was preempted by the federal statute. *See*

*Smith v. CIGNA HealthPlan of Arizona,* 203 Ariz. 173, 178, ¶ 11, 52 P.3d 205, 210 (App.2002)(explaining that questions whether a state cause of action is preempted by a federal statute "must be considered and resolved by the state court.") (citation omitted).

a final permit decision, thus making Article 10 ineffective.

### A. Article 10 does not change the effective date of ADEQ's final permit decision.

¶ 31 The City contends that Article 10 creates a different date on which an ADEQ permit decision becomes final and appealable. According to the City, Article 10 mandates that an agency action is not final and thus not appealable until after the agency head reviews an ALJ decision, and then either modifies or accepts such decision. The City asserts that this conflicts with 271(N), which provides that a final permit decision exists when the permit is issued, before any administrative review.

¶ 32 We agree with the City that 271(N) requires that the Director of ADEQ specify the effective date of a hazardous waste permit at the time the permit is issued. We also concur that Article 10 is the sole process for the administrative review of any ADEQ permit. See A.R.S. § 49–114. We disagree, however, that the two provisions conflict.

¶ 33 Article 10 does not address the effective date of permits issued by state agencies. The "final administrative decision" referenced in Article 10, and cited by the City, refers to a final decision on an administrative appeal, triggering a right to judicial review in the superior court under A.R.S. § 41–1092.08(H). Article 10 does not encompass whether agency decisions being appealed are in effect or stayed during the judicial review pursuant to subsection 41–1092.08(H); rather, it merely sets forth the procedures for subsequent administrative review. The effective date of any permit issued thus remains governed by 271(N), and is unaffected by the passage of Article 10. Moreover, 271(N) also remains effective law, approved by the EPA for the state's hazardous waste program. 40 C.F.R. § 272.151(b)(2)(ii). Article 10 and 271(N) do not conflict. Instead, they each address different elements of the permit/appeal process.

### B. Article 10's replacement of 271(Q) creates no statutory conflict.

¶ 34 The City provides a cursory argument apparently suggesting that because Article 10 replaced 271(Q) as the method to administratively appeal ADEQ hazardous waste permit decisions, Article 10 is therefore void. The City cites *R.L. Augustine Constr. Co. v. Peoria Unified School Dist.*, 188 Ariz. 368, 936 P.2d 554 (1997), for the proposition that "[r]ules that omit administrative or judicial review provisions required by statute are void." To the extent the City argues that Article 10 somehow eliminates a party's right to administrative or judicial review of a hazardous waste permit, we find the argument unpersuasive. A party who wishes to appeal a final permit decision issued by ADEQ can do so under Article 10. The replacement of 271(Q) does not create a vacuum, depriving a person of the right to administrative or judicial review. Therefore, Article 10's replacement of 271(Q) does not render void any statute referenced by the City.

### CONCLUSION

¶ 35 For the aforementioned reasons, we affirm the trial court's judgment on these issues.

CONCURRING: PHILIP HALL, Judge, and MICHAEL A. YARNELL, Judge Pro Tempore.*

---

* NOTE: The Honorable Michael A. Yarnell, Judge of the Maricopa County Superior Court, was authorized by the Chief Justice of the Arizona Supreme Court to participate in the disposition of this appeal pursuant to the Arizona Constitution, Article 6, Section 3, and A.R.S. §§ 12–145 to –147 (1992 & Supp.2002).